IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **Cynthia Allen** § | |
| § | |
| Plaintiff, § | |
| § | C. A. No. |
| v. § | |
| § | |
| **MidSouth Bank, N.A.** § | |
| **Alex Calicchia** § | |
| **Michael Lea** § | |
| § | **(Jury Demanded)** |
| Defendant(s). § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**TO THE HONORABLE JUDGE:**

**COMES NOW** Plaintiff, Cynthia Allen, filing this Original Complaint complaining of Defendant, MidSouth Bank, N.A. and in support thereof would show as follows:

**I.**

**JURISDICTION, PARTIES AND VENUE**

1. This Court has jurisdiction over the causes of action asserted by Plaintiff pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*.; 42 U.S.C. § 2000e5(f), 42 U.S.C. § 2000e(k) (Pregnancy Discrimination Act), 28 U.S.C. §§ 1331 and 1343(a)(4), 29 U.S.C. 2615 (a)(1)(2), and 42 U.S.C. § 1981a(a)(1).

2. Venue is proper in this district pursuant to 42 U.S.C. § 2000e5(f) and 28 U.S.C. § 1391(b)(1)(2) & (c)(2). Defendant MidSouth Bank operates several bank locations in the Southern District of Texas. This establishes minimum contacts with the area encompassing the Southern District of Texas and, all or a substantial part of the unlawful acts set for below occurred in this district.

3. Plaintiff, Cynthia Allen (hereinafter "Plaintiff"), is an individual who resides in Houston, Fort Bend County, Texas. Plaintiff is a member of a group protected by Title VII and The Family Medical Leave Act and was at all relevant times an employee within the meaning of the

1

applicable statutes.

4. MidSouth Bank N.A. (hereinafter "Defendant") regularly conducts business in the State of Texas and in the State of Louisiana. Defendant MidSouth Bank N.A. was at all relevant times an employer within the meaning of Title VII and the Family Medical Leave Act.

5. The causes of action complained of herein wholly or partly arose in the Southern District of Texas, Houston Division.

6. Defendant(s), MidSouth Bank N.A., Alex Calicchia, and Michael Lea are employers in accordance with 29 U.S.C. § 2611(4)(A)(i-ii).

7. At the time of the incidents giving rise to this complaint, the plaintiff was an employee in accordance with 29 U.S.C. 2611(2)(A)(i-ii).

## II.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission (hereinafter "EEOC") on or about June 10, 2009. The charge was amended on or about September 15, 2009. In said Charge No. 460-2009-03710, Plaintiff asserted that she was subjected to discriminatory treatment in violation of Title VII of the Civil Rights Act of 1964, as amended, because of her gender, sex and or pregnancy, and in retaliation for complaining about the discrimination concerning her protected status.

9. The EEOC issued a Right to Sue Notice authorizing this lawsuit on March 1, 2012. Plaintiff has exhausted her administrative remedies and files this suit within the statutory limitations period. A copy of such "Right to Sue" letter accompanies this complaint as exhibit 1.

## III.

### FACTUAL BACKGROUND

10. Plaintiff began her employment with MidSouth Bank N.A. on or about August 21, 2007. In regards to MidSouth Bank, it is asserted that the number of its employees exceeds 500.

The plaintiff was discharged from employment on or about June 22, 2009 when she was unable to

relocate to Louisiana.

11. The plaintiff was hired by MidSouth Bank as a Marketing Specialist III.

12. The plaintiff was directly supervised by Michael Lea and who in turn was directly supervised by Alex Calicchia.

13. The plaintiff complained about the actions of Michael Lea to officials of MidSouth.

14. The plaintiff was approved for Family Medical Leave Act leave which began on January 30, 2009.

15. The plaintiff returned to work from leave on March 13, 2009.

16. The effect of the practices complained of in the succeeding paragraphs, in accordance with the statutory basis, stated above, has been to deprive the Plaintiff of equal employment opportunities and to otherwise adversely affect her status as an employee because of her sex, because she complained about the discrimination concerning her sex, and for exercising her rights under the Family Medical Leave Act.

## IV.   CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

*Violation of Title VII - Disparate Treatment (MidSouth Bank N.A.)*

17. Plaintiff repeats and realleges the allegations contained in the foregoing, paragraphs 1 through 16.

18. Defendant MidSouth Bank, via its employee Michael Lea and Alex Calicchia engaged in discriminatory behavior towards the plaintiff, based upon her sex by creating a hostile work environment. The plaintiff was subjected to differential treatment by Mr. Michael Lea.

19. Prior to March 24, 2008, the plaintiff, while pregnant (such pregnancy ended in a miscarriage on March 14, 2008) was yelled at on several occasions by Mr. Lea and was deliberately "toyed" with regarding the plaintiff's meeting schedule with Mr. Lea in that he would

3

nonchalantly miss meetings with the Plaintiff, thereby affecting her work schedule and in his hopes, affect her job performance. Mr. Lea managed the plaintiff with a heavy hand. Regardless of the job duty or pending circumstance, Mr. Lea demanded that the plaintiff constantly check in with him. He called this supervision method "one on one". The supervision method utilized by Mr. Lea resulted in the Plaintiff feeling like she was always working in an environment based on "pins and needles". The Plaintiff, in regards to her work environment, from day to day, never knew what to expect regarding Mr. Lea's behavior.

20. In addition to the work environment, Mr. Lea also demanded constant communication from the Plaintiff, even while the plaintiff conducted her private and primarily medical based affairs. As an introduction of Mr. Lea's intrusion and harassment into the life of the plaintiff, it is asserted that on May 21, 2008, Mr. Lea threatened to terminate the plaintiff and retorted to her "you report to me not Alex". This communication from Mr. Lea was after a dental visit where the plaintiff returned to work with eight stitches evidencing the medical procedure and in which Mr. Lea accused her of missing a scheduled appointment with him. The plaintiff, however, communicated via email with Mr. Lea, while she was at the dentist's office and Mr. Lea was fully aware of her location and the circumstances surrounding her return. Any such complaint regarding the plaintiff and the missed meeting was pretextual to Mr. Lea's true motive and animus towards the plaintiff.

21. Although the plaintiff had informed Mr. Calicchia about the conduct of Mr. Lea verbally, the plaintiff submitted a written complaint to Mr. Calicchia on May 22, 2008, and also made Ms. Sara Huval, a Human Resource Official, aware of the hostile work environment due to Mr. Lea's conduct.

22. On March 24, 2008, the plaintiff was given a verbal warning for reportedly being rude to Mr. Lea on March 19, 2008.

23. After receiving notification from Mr. Calicchia that he spoke with Mr. Lea concerning her complaint, the plaintiff was also informed by Mr. Calicchia that a meeting would take place between Mr. Lea, Ms. Huval, and Mr. Calicchia regarding her concerns on June 2, 2008.

This meeting never occurred.

24. On June 9, 2008, the plaintiff was informed that MidSouth Bank viewed her request for an investigation into the employment and supervisory practices of Mr. Lea as a request for a "witch hunt" and that her concerns were deemed to be unfounded.

25. It is asserted that Ms. Huval was derelict in her duty to investigate the complaint of the plaintiff and that she instead averted the plaintiff to MidSouth's employee assistance program. The plaintiff participated in the assistance program as instructed.

26. Recognizing the culture of her work environment, the Plaintiff informed her employer that she was again pregnant, and that this pregnancy was considered to be a high risk one due to the previous mischarge.

27. Upon learning of the plaintiff's pregnancy, Mr. Lea resumed his "program" of harassment of the Plaintiff. As an example of the animus towards the plaintiff's pregnancy, On July 3, 2008, Mr. Lea, when informed by the Plaintiff of the need to adjust her work schedule in favor of the impending medical appointments, as they would arise, Mr. Lea's first reply was "are you going to keep the baby".  Ironically, the same day, July 3, 2008, the plaintiff received a verbal/written warning for absenteeism.

28. The plaintiff was threatened by Mr. Lea when she received the verbal/written warning regarding absenteeism, that if she informed Alex Calicchia about the warning, she would be written up for insubordination.

29. The campaign of discrimination towards the plaintiff regarding her pregnancy continued. From initially allowing and then subsequently refusing to allow the plaintiff to partake in her assigned duties in a pre-scheduled and approved work area in Lake Charles, Louisiana to requiring that advance notice be provided to him in order for him to approve doctor visits, it seemed to the Plaintiff that Mr. Lea would stop at nothing in his effort to harass the plaintiff as a result of her pregnancy.  Mr. Lea also required the plaintiff to take a whole day off work in order to attend her doctor visits.

30. On August 4, 2008, the Plaintiff informed Mr. Lea that she was experiencing abnormal spotting during her pregnancy and that she had made a medical provider appointment for the next day. Mr. Lea informed the Plaintiff that he required 48 hours advance notice to approve her doctor visits. In fear of being terminated, the Plaintiff cancelled the appointment. The Plaintiff informed Ms. Huval in Human Resources regarding Mr. Lea's behavior, to no avail.

31. On November 26, 2008, while working in the Houston office, and preparing to work on November 28, 2008, the plaintiff was made aware by Mr. Calicchia, Chief marketing Officer, and Mr. Lea's supervisor, that the due to security concerns, the Houston office, although scheduled to be open on November 28, 2008, was going to be closed instead. This information was passed on to the Plaintiff by Mr. Calicchia when the Plaintiff contacted him via phone. Mr. Lea was not in the office on that day and Mr. Lea had not informed the Plaintiff of the change.

32. On November 26, 2008, the plaintiff received a call from Mr. Lea regarding the Plaintiff contacting Mr. Calicchia regarding clarification of the office status, and in angrily tone, inquired of the plaintiff why did she contact Alex Calicchia. Furthermore, while all of the other employees, including any marketing employees, were scheduled to work on November 28, 2008, were now going to be off due to the office closure, the Plaintiff was informed by Mr. Lea that he would be giving her an assignment to be done by 5:00 p.m. the day of the office closure. The assignments came by phone and email on November 27, 2008.

33. In accordance with Mr. Lea's instructions, the Plaintiff phoned him at 5:00 p.m. She was told by Mr. Lea that he would call her back in 20 minutes, he never did. When the Plaintiff, out sheer fear for her job, sent an email to Mr. Lea around 6:10 p.m. letting him know that she was standing in ready mode and was still anticipating his call, he responded by email later on that evening essentially informing the Plaintiff that he forgot that they were scheduled to talk at that time.

34. In an effort to further harass and discriminate against the Plaintiff, Mr. Lea made every effort to get the Plaintiff to agree to "control" her doctor appointments by scheduling them on certain days. Given the Plaintiff's status of being pregnant, it was virtually impossible to predict

6

with certainty when the appointment would be necessary.

35. Mr. Lea harassed the plaintiff regarding the use of the sick days she was required to utilize in order to seek care during her pregnancy. Mr. Lea would require the Plaintiff to take the whole day for sick leave, even if she was able to come back to work, he would also assign assignments to others to contact the plaintiff while she was out on sick leave, and after setting the employment setting in that direction, he would reverse course and then require the plaintiff to come into work or do assignments while on sick leave.

36. As if the harassment regarding her pregnancy status could not become any more manifested, Mr. Lea came to one of the Plaintiff's doctor appointments to retrieve office equipment (a laptop) and to get an update from the Plaintiff regarding her projects. This purported emergency meeting to gather an "update" for work related purposes, was given by the Plaintiff, for a whole hour, in her vehicle, right there on the parking lot of the doctor's office.

37. On January 29, 2009, one day before the plaintiff was scheduled to begin her protected maternity leave, Mr. Lea provided the plaintiff with a performance review out of sequence, in that the Plaintiff's next evaluation was set for May 2009. Furthermore, Mr. Lea requested that the plaintiff turn in her office keys, access card, company cell phone, laptop and all requisite passwords.

38. The Defendant's discriminatory practices described above have denied the Plaintiff promotional opportunities if any, compensation, and continued employment to which she was otherwise entitled. The plaintiff was in a non win situation, (1) if she complained about Mr. Lea to Mr. Calicchia she would be verbally assaulted, threatened with termination and harassed some more, (2) if she risked it and gathered her courage to complain to Mr. Calicchia and others in Human Resources, she would not get any help.

The plaintiff was treated like a bouncing ball. This conduct has resulted in emotional distress and other harm for which entitles the plaintiff to compensation.

39. The Defendants have undertaken these discriminatory practices willfully or with reckless disregard for the rights of Plaintiff. Such rights are protected under 42 U.S.C. § 1981(a)(a)(1).

7

40. These employment practices violated § 703 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; 42 U.S.C. § 2000e5(f), and 42 U.S.C. § 2000e(k) (Pregnancy Discrimination Act). The actions of MidSouth Bank were conducted through their agents. The respondeat superior principles construed under the herein aforementioned statute(s) are hereby invoked for the liability of MidSouth Bank N.A. for its agents who engaged in the prohibited discriminatory behavior.

## SECOND CLAIM FOR RELIEF

*Violation of Title VII - Disparate Impact (MidSouth Bank N.A.)*

41. Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs 1 through 39.

42. Defendant engaged in a prohibited activity when it applied its work related sick leave policies against the Plaintiff in a discriminatory manner. In every instance where the Plaintiff invoked the sick leave policy of the Defendant MidSouth Bank, she was unfairly treated by Mr. Lea in its application to her protected class. An example of this type of conduct happened on May 6, 2009. The plaintiff received an employee warning in relation to the use of the company's time policy as it affected the plaintiff's need to care for a sick child. Mr. Lea also required the plaintiff to take a whole day off work in order to attend her doctor visits.

43. The Defendant's discriminatory practices described above have denied the Plaintiff promotional opportunities, compensation, and continued employment to which she was otherwise entitled. This conduct has resulted in emotional distress and other harm for which entitles her to compensation.

44. The Defendants have undertaken these discriminatory practices willfully or with reckless disregard for the rights of Plaintiff. Such rights are protected under 42 U.S.C. § 1981(a)(a)(1).

45. These employment practices violated § 703 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; 42 U.S.C. § 2000e5(f), and 42 U.S.C. § 2000e(k)

(Pregnancy Discrimination Act). The actions of MidSouth Bank were conducted through their agents. The respondeat superior principles construed under the herein aforementioned statute(s) are hereby invoked for the liability of MidSouth Bank N.A. for its agents who engaged in the prohibited discriminatory behavior.

### THIRD CLAIM FOR RELIEF

*Violation of Title VII – Retaliation (MidSouth Bank)*

46.     Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs 1 through 45.

47.     Defendants took disciplinary action against Plaintiff as a result of the Plaintiff making complaints with regard to her hostile work environment allegations contained in paragraphs 1-45, incorporated herein by reference. This disciplinary action was in the form of write-ups, verbal warnings, and threatened disciplinary action.

48.     After Plaintiff reported her concerns about the harassment, and the hostile work environment, based upon her protected status (sex/pregnancy) the Plaintiff was subjected to further retaliation by the Defendants.  Plaintiff was further retaliated against in the following ways:

    a.      On March 26, 2009, the plaintiff was informed by MidSouth Bank that her employment with the bank would end on June 22, 2009, unless by April 27, 2009, she moved to take a position with the bank in Lafayette, Louisiana

    b.      The plaintiff, after informing Defendant MidSouth, on April 15, 2009, that, due to circumstances beyond her control, she could not relocate to Lafayette, Louisiana, was informed by Defendant MidSouth on March 26, 2009, that effective June 22, 2009 she would be terminated because she refused to relocate.

    c.      Absent the plaintiff, on information and belief, no other employee, after returning from approved Family Medical Leave Act leave was required to re-locate to another state in order to retain their

9

employment at the bank.

    d.    On March 27, 2009, MidSouth bank posted the position it offered to the plaintiff, prior to the announcement of her decision.

    e.    The plaintiff informed MidSouth Bank's CEO of her concerns regarding harassment and discrimination, as well as the executive team. These cries for help fell on deaf ears. There was no relief provided and on June 22, 2009, the plaintiff was terminated.

    f.    The plaintiff, had she been able to take the position in Lafayette, as required by the bank, she would have been accepting a position which was a demotion in several key areas. Furthermore, the marketing position in Houston was not even offered to the plaintiff.

## FOURTH CLAIM FOR RELIEF

*Violation of Family Medical Leave Act (MidSouth Bank N.A., Michael Lea, and Alex Calicchia)*

49.    Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs 1 through 48. All of the Defendants listed herein (MidSouth Bank, Alex Calicchia, and Michael Lea) are asserted as defendants in accordance with 29 U.S.C. § 2611(4)(i)-(ii)(l). The Defendants are engaged in the banking industry primarily in the State of Texas and the State of Louisiana, with branches in both states. Defendant MidSouth has at least 500 or more employees. All of the Defendants engage in interstate commerce in accordance with the provisions established under 29 U.S.C. § 2611(1). Defendants Lea and Calicchia were the plaintiff's direct supervisors and were in a very real sense employers in accordance with the Family Medical Leave Act.

50.    The plaintiff was approved for Family Medical Leave Act leave which began on January 30, 2009. The plaintiff returned to work from leave on March 13, 2009.

51.    In violation of 29 U.S.C. § 2615 (a)(1) and specifically 29 U.S.C. § 2614 (a)(1)(A)(B) and (2), the Defendant's engaged in a campaign led by either Defendant Lea and or Defendant Calicchia to position and transfer the plaintiff's job to the Lafayette Louisiana area. These efforts were made while the plaintiff

was on protected maternity leave. There focus and effect of these efforts was to deprive the plaintiff of her protected status under the Family Medical Leave Act once she returned.

52. The Defendant(s) made efforts to effectively rid the company of the plaintiff's presence by manipulating the job for which she was assigned. Although the accomplishment of this scheme was executed all the more discreetly and timed to take place "shortly" after she returned from her protected leave, it is plainly obvious that the Defendant's planned this maneuver at the time the Plaintiff first went on protected maternity leave. This can be seen in the fact that Mr. Lea, prior to exiting of the plaintiff for maternity leave, virtually treated the plaintiff as if she was being processed for termination.

53. Requiring the plaintiff to either "take it or leave it" as it related to the purported transfer of her job to Lafayette Louisiana, which the plaintiff was terminated on June 22, 2009 for failing to be able to relocate, was in contravention of the purposes of the Family Medical Leave Act.

54. The acts complained about above and herein were done with Defendant MidSouth Bank's tacit approval, and were done in contravention of the plaintiff's protected status under the Family Medical Leave Act.

## V.

## JURY DEMAND

55. Plaintiff requests that this action be heard before a jury.

## VI.

## DAMAGES

56. Defendant's conduct constitutes violations of statutory law. That unlawful conduct seriously affected Plaintiff in her occupation, trade and business. Because of Defendant's unlawful conduct, Plaintiff has suffered, suffers, and will suffer in the future humiliation, mental anxiety, stress, and other damages. Accordingly, Plaintiff seeks all general, special, incidental and consequential damages available, all in an amount to be proved at trial.

57. Because of Defendant's unlawful conduct, it has been necessary for Plaintiff to retain the undersigned attorney to represent her. Plaintiff has agreed to pay the attorney reasonable attorney's fees for the preparation and trial of the causes, and further for any appeal thereof should same become necessary.

58. Additionally, Plaintiff has suffered out-of-pocket expenses, which include litigation costs, (including experts) and other expenses to preserve her ability to earn a living. Accordingly, Plaintiff seeks all general, special, incidental and consequential damages as shall be proven at trial.

59. Further, Plaintiff seeks pre-judgment interest at a rate commensurate with the actual rate of interest in the marketplace or, alternatively, the statutory rate of interest because of the delay in receiving the damages and to avoid unjust enrichment to Defendant. Plaintiff also seeks post-judgment interest at the maximum rate allowed by law in the event that Defendant does not promptly tender damages assessed against them and to avoid unjustly enriching Defendant.

60. Further, Plaintiff seeks any and all punitive or exemplary damages that are available within the context of this suit, based upon any statutory basis, for the willful and recklessly disregard for the plaintiff's civil rights.

## VII.
## PRAYER

WHEREFORE, premises considered, Plaintiff prays that Defendant be cited to appear and answer herein, and that on final trial, Plaintiff has judgment against Defendant Mid South Bank N.A. on all the four claims listed herein and against Michael Lea and Alex Calicchia under claim number four together with:

    a.    Permanent injunction enjoining Defendant, its agents, successors, employees, and those acting in consort with Defendant, from continuing to violate Plaintiff's civil rights.

    b.    All damages to which Plaintiff may be entitled pursuant to this Original Complaint,

or any amendment(s) thereto, including but not limited to back pay, reinstatement, front pay, punitive or exemplary damages, statutory relief at law, and equity;

c. Compensatory damages for pain and mental suffering;

d. Reasonable attorney's fees, with conditional awards in the event of appeal;

e. Pre-judgment interest at the highest rate permitted by law;

f. Post-judgment interest from the judgment until paid at the highest rate permitted by law;

g. Costs of court; and

h. Such other and further relief, at law or in equity, to which Plaintiff may be entitled, whether by this Original Complaint or by any amendment hereto.

Respectfully submitted,
Law Office of Derrick D. King
6260 Westpark Dr. Suite 231
Houston, Texas 77057
713-334-9500 Office
713-481-0814 Fax

By:_____
Derrick D. King
State Bar No. 24036911
Attorney for Plaintiff